# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## CASE NO: 8:19-cv-00728-WFJ-CPT

**TERRI CARFAGNO,**
individually and on behalf of all
others similarly situated,

      **CLASS ACTION**

    Plaintiff,

      **JURY TRIAL DEMANDED**

v.

**MONEY MAP PRESS, LLC,**

    Defendant.
_____/

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Terri Carfagno brings this class action against Defendant Money Map Press, LLC ("Defendant") and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

2. Defendant claims to give their customers "access to a team of investment experts – with more than 250 years of combined experience – who work to uncover these global trends well before the mainstream media even takes notice."[1]

3. Defendant sells literary subscriptions to consumers which include self-help financial courses and documents.

---
[1] https://moneymappress.com/visitors/about/

1

4. Defendant engages in unsolicited telemarketing directed towards prospective customers with no regard for consumers' privacy rights.

5. Defendant's telemarketing consists of sending text messages to consumers soliciting them to purchase its goods and/or services.

6. Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

7. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## **JURISDICTION AND VENUE**

8. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

9. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant has sent the same text message complained of by Plaintiff to other

individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Sarasota County, Florida.

11. Defendant is a Maryland corporation with its principal address at 105 W Monument St., Baltimore, MD 21201. Defendant directs, markets, and provides business activities throughout the State of Florida.

## THE TCPA

12. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

13. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14. The TCPA exists to prevent communications like the ones described within this Complaint. See Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 744 (2012).

15. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

16. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

17. A defendant must demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

18. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

**FACTS**

19. On or about November 22, 2018, Defendant caused the following automated text message ("First Text Message") to be transmitted to Plaintiff's cellular telephone number ending in 0087 ("0087 Number"):



20. The First Text Message constitutes telemarketing/advertising because it promotes Defendant's business, goods and services.

21. Specifically, Defendant attempts to sell Plaintiff a subscription and/or package to its financial courses.

22. Defendant makes a profit on every package and/or subscription that is purchased through its website.

23. The First Text Message includes a link which leads to the following webpage (the "Website") where Defendant's goods and services are marketed:



---

[2] https://pro.moneymappressinfo.com/p/TGTLNC39/LTGTU926/?SID=tclick&h=true

24. Upon clicking the "Join Now" button, the viewer is provided the following package and/or subscription packages for purchase:



[3]

25. On or about January 15, 2019, Defendant also caused the following automated text message ("Second Text Message") to be transmitted to Plaintiff's 0087 Number:

---

[3] https://purchases.moneymappress.com/TGTLNC39/LTGTU926/index.htm?pageNumber=2&SID=tclick&h=true&link_source=button&vidTime=3

> Tue, Jan 15, 9:48 AM
>
> PTE: One Industry is creating Millionaires overnight! The time to check it out is right NOW! But you need to go here: t.zip.ma/gzt8c
> Txt STOP to OptOut

26. The Second Text Message constitutes telemarketing/advertising because it promotes Defendant's business, goods and services.

27. Specifically, Defendant monetizes self-help financial services and information and the Second Text Message states "One Industry is creating Millionaires overnight! The time to check it out is right NOW!" and includes a hyperlink to another website ("Second Website").

28. Plaintiff received the subject text messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

29. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

30. Upon information and belief, Defendant owns and/or operates the Website or the Website is operated on behalf of Defendant.

31. Upon information and belief, Defendant owns and/or operates the Second Website or the Second Website is operated on behalf of Defendant.

32. At no point in time did Plaintiff provide Defendant with her express consent to be contacted by text messages using an ATDS.

33. Plaintiff is the sole user and/or subscriber of the 0087 Number.

34. Additionally, the 0087 Number has been listed on the National Do Not Call Registry since July 14, 2008.

35. The 0087 Number is Plaintiff's personal phone number.

36. The number used by or on behalf of Defendant (990-00) is known as a "short code," a standard 5-digit code that enables Defendant to send SMS text messages *en masse*.

37. The impersonal and generic nature of Defendant's text messages, demonstrates that Defendant utilized an ATDS in transmitting the messages.

38. Further, on January 23, 2019, Plaintiff replied back "[s]top" to Defendant's text message and immediately received the following auto-reply from Defendant:

> Today 10:09 AM
>
> Stop
>
> All-In-1 Info Alerts: You have been opted out and will not receive any more messages from All-In-1 Info Alerts. 1-866-866-0009

This auto-reply was transmitted automatically without human intervention in response to Plaintiff's "stop" request. Defendant's use of auto-reply functionality further demonstrates that Defendant utilized an ATDS to text message Plaintiff.

39. To send the text message, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

40. The Platform has the capacity to store telephone numbers.

41. The Platform has the capacity to generate sequential numbers.

42. The Platform has the capacity to dial numbers in sequential order.

43. The Platform has the capacity to dial numbers from a list of numbers.

44. The Platform has the capacity to dial numbers without human intervention.

45. The Platform has the capacity to schedule the time and date for future transmission of text messages.

46. To transmit the messages at issue, the Platform automatically executed the following steps:

> (1) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;
>
> (2) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;
>
> (3) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.
>
> (4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

47. The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

48. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



49. Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted approximately thirty seconds reviewing all of Defendant's unwanted messages. Each time, Plaintiff had to stop what she was doing to look down at her phone to review the message.

50. Further, Plaintiff was at work when she received both messages, which resulted in her phone vibrating and if she does not review the message, her phone vibrates again a few minutes later. As a result, Plaintiff has to stop what she was doing to review each message, which slowed down her work activities.

51. Next, Plaintiff wasted additional minutes discussing these text messages with and retaining counsel for this case in order to stop Defendant's unwanted calls.

52. Plaintiff also wasted time responding "STOP" to the message so that she would no longer receive messages from Defendant.

53. After she replied "STOP," Plaintiff received another message confirming that she would no longer be contacted. She spent additional time reviewing this reply.

54. In all, Defendant's violations of the TCPA caused Plaintiff to waste several minutes of her time in addressing and attempting to stop Defendant's solicitations. This time was spent while Plaintiff was at his home or at work and could have been pursuing other personal activities.

55. Furthermore, Defendant's text messages took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes. The cumulative effect of unsolicited

text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

### PROPOSED CLASS

56. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

57. Plaintiff brings this case on behalf of the below defined Class:

> **No Consent Class:** All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number.

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action (1) were text messaged by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and/or services.

58. Defendant and their employees or agents are excluded from the Class.

59. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

60. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

61. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

62. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant can meet their burden of showing that they obtained prior express written consent to make such calls;
>
> (3) Whether Defendant conduct was knowing and willful;
>
> (4) Whether Defendant are liable for damages, and the amount of such damages; and
>
> (5) Whether Defendant should be enjoined from such conduct in the future.

63. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

64. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

65. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

66. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

67. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

68. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

69. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. §

227(b)(1)(A)(iii).

70. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. at § 227(a)(1).

71. Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

72. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

73. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

74. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

### COUNT II
### Violation of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Do Not Call Registry Class)

75. Plaintiff repeats and realleges the paragraphs 1 through 67 of this Complaint and incorporates them by reference herein.

76. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

77. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

78. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

79. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

80. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

81. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged

herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

82. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**WHEREFORE**, Plaintiff Terri Carfagno, on behalf of herself and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the communication or transmittal of the text messages as alleged herein.

Date: September 9, 2019.

> Respectfully submitted,
>
> **EISENBAND LAW, P.A.**
>
> */s/ Michael Eisenband*
> 515 E. Las Olas Boulevard, Suite 120
> Ft. Lauderdale, Florida 33301
> Michael Eisenband
> Florida Bar No. 94235
> Email:
> MEisenband@Eisenbandlaw.com
> Telephone: 954.533.4092
>
> **HIRALDO P.A.**
> Manuel S. Hiraldo, Esq.
> Florida Bar No. 030380
> 401 E. Las Olas Boulevard
> Suite 1400
> Ft. Lauderdale, Florida 33301
> Email: mhiraldo@hiraldolaw.com
> Telephone: 954.400.4713
>
> *Counsel for Plaintiff and the Class*